Go to the second case on today's calendar, Alvarez-Cruz v. Garland Good morning. May it please the Court, my name is Kari Hong. I represent Petitioner Martha Alvarez-Cruz. With leave of the Court, I respectfully wish to reserve one minute for rebuttal. The parties agree on remand, but we disagree on the scope of that remand. I will address Ventura, the cognizability of the group Honduran Women, and then CAT. Starting with Ventura, this case presents the rare circumstances that are an exception to Ventura's ordinary remand rule. First, there is no agency expertise on what Prodomo means. This is not like Brand X, where the agency has overruled the Ninth Circuit. Instead, Prodomo held that the BIA erred when not finding Guatemalan women particular, but then when denying Ms. Alvarez's claim, the BIA cited to Prodomo and repeated the same error that Prodomo had corrected. This is not a dispute over facts. It's a dispute over law and the specific meaning of Prodomo. This Court is the best arbiter over the meaning of its own word to declare that the group of gender plus nationality is, as opposed to may be, cognizable. Well, if we decide that issue, and if we decide it in your favor, what's the point of the remand? The remand will then allow the BIA to determine, A, whether she's in that group, as a factual matter, and then whether there's a nexus, whether the persecution was based on that, and whether there was internal relocation. So those issues then will be back to the BIA to decide. But the remand requested by the government, and as to which you did agree, was not on those questions. The remand, as to which you did agree, was whether or not there was a particularized social group with respect to a 100-year-old woman who could not escape an abusive relationship. That question, I think, is subsumed in and has made moot if we adopt your position with respect to Honduran women. Isn't that right? Yes, Your Honor. And if you agree with me, if the government is not asking for remand on questions of changed circumstances, like it did in Ventura, you're correct that there is nothing under withholding to remand. Right. So why did you agree? Well, I guess you agreed to the remand in case you lose on the question you're trying to have us decide. Yes, Your Honor. And then the remand would be on the AB issue. But if you're correct, if the court reaches gender, there's no reason for it to address AB, in our view. Now the second exception to Ventura is that we have inconsistent agency action. Sometimes the BIA and the IJs apply per domo, and they grant relief. That happens 13 times in the year. And sometimes the BIA and the IJs don't, like in the three cases cited by the Florence Project amicus, where the IJs cite the lack of BIA precedent as proof that women aren't eligible for this relief. And on this record, the BIA denied Ms. Alvarez's claim to be a Honduran woman by citing to per domo. So Ms. Alvarez is stuck in this Kafkaesque nightmare in that she keeps asserting per domo, makes her eligible, and then the IJ and the BIA cite per domo to say she's not. Maloui gave no chevron deference to the BIA decision when there was a showing that the agency had inconsistent decisions on whether paraphernalia related to drugs or not. Arbitrary agency action is a Ventura exception. As explained by Maloui, statutes should be interpreted as a symmetrical and coherent regulatory scheme. Third, there is no need for the agency to make an initial determination on this record. Ms. Alvarez exhausted her claim to the BIA and to the IJ. The BIA addressed it by citing to the initial distinction the BIA invoked per domo to say that size nonetheless defeats particularity. This court has also given the BIA deference on this question. It has remanded 11 cases in 12 years, asking the BIA to decide this issue. Each time on remand, the BIA won't. The most recent remand happened in 2020. In Martinez-Mejia, this court again remanded the question to the BIA. In September 2021, the BIA recognized that the court had remanded the case and, quote, should, unquote, decide the issue, but again it refused. You're arguing that we take a broader definition of social class because it will be useful to you and parties in general in future cases, but in terms of this case, the parties in this case would get full relief if the class was Honduran women trying to get out of an abusive relationship. That would be as far as we would need to go to give full relief here. Is that not correct? No, Your Honor. We're asking for the court to decide affirmatively Honduran women. I know you're asking for a broader ruling, but that's for your litigation in the future. That's to make litigation in the future useful. I'm not sure we have to worry about that. Sometimes we think about it, but I don't think it's a determinative issue. The narrower test of Honduran women wanting to get out of an abusive relationship would be a ... We don't even say that's the only social class. We certainly might say that is a social class that's recognizable. That would be enough to give full relief to these parties. Why do we have to go further? It is the second group that we have asked for. You've asked for it, but why? Put yourself in the perspective of these people. Why would we need to go further to give them the relief they want? For my client, either action, a definitive decision today, will finally end her 10-year crusade, whether the court grants the withholding based on the Honduran women or whether it based on the more specific group. Either decision will resolve it, and the court only needs to reach one. Again, the only concern is that this has been going on and on and on. You want to make it easier, or clearer at least, for future litigation. That can sometimes be a policy decision judges think about, but it is not the issue before us. It's not our issue that we must do that. We just have to resolve the fight that's before us. The fight before this court, though, started in 2013 when she raised to the IJ that she's a part of the group of Honduran women. That was raised again in 2018. The IJ said no. The BIA said no on that issue. That issue also is before this court. To Your Honor's question, either resolution will resolve it in her favor. I assume on the remand, if we give a remand to the agency, the agency can decide either or both of the particular social groups. That is to say, it could decide all Honduran women, couldn't it? I don't see the requested remand as limiting the agency and limiting your argument to the agency. Am I wrong about that? Yes. No, we're asking the court to make some legal determination that some group is cognizable, and then the agency can... No, I understand that. But if we were to remand and disagree with you so that we do not ourselves decide that Honduran women are themselves a social group, and if we remand, is it open to you to argue in front of the agency, not only Honduran women unable to leave an abusive relationship, but also to argue Honduran women as a social group? Yes. This is remand. You can make both arguments on remand. Right. But I'd like to point out, when we made that argument before to the BIA, the BIA defeats particularity. So we have raised that issue to the BIA. In other words, you might lose in front of the BIA. Well, because they're misinterpreting PRODOMO. And this is why we're begging for the court intervention to finally clarify what PRODOMO means, because the BIA and the IJs are playing fast and loose. But if they rule against you on that, it still is going to give full relief to your party. So maybe you need to fight this in a case where it is the essential determinative. Well, Your Honor, she needs relief on either of these groups. Right. And that's why if we remanded for the BIA and the BIA chose the narrow ground, it seems to me you're fully satisfied. Well, in the abstract, that would be the case. But in the history of this case, the BIA is not deciding gender-based groups. We have the second Rule 28J letter for 20 years. The BIA has been asked to issue regulations. I fully understand why you want the broader rule, even if your particular client may not need it. There's another thing with respect to your client. Before your time runs, I'd like you to address, at least briefly, your claim under CAT. Yes, Your Honor. Thank you. On CAT, the BIA gave two reasons to deny CAT, and neither are defensible. First, the BIA claimed that Ms. Alvarez, quote, did not submit sufficient evidence to establish that, more likely than not, she faces an individualized risk of torture. This is contrary to the evidence of the continuing interest by Jose in seeking to harm her. The credible testimony said that Jose calls her every day while in the United States. He is the father to her children and has access to her location through them. There's a sworn affidavit by her sister. Nineteen days before the last hearing, Jose showed up at her house in Honduras, threatening to find Ms. Alvarez and bring her back to him because, quote, she belonged only to him. The best case is Xochitl Jaime's, which is when there is credible testimony and the conditions in the home country remain the same, it is more likely that those who harmed a person will do so again. The second issue is that the BIA claimed there is only, that there is general evidence that, quote, some police officers in Honduras are corrupt and do not deal effectively with the domestic violence, unquote. That was just some, because you can say there are evidence of some officers in the United States that are corrupt. Well, under acquiescence, under Xochitl Jaime's, one rogue officer is enough for acquiescence. And that is the point. You don't need rogue officers. I think it's efficient for you to show that whether rogue or not, people, women who are subjected to or threatened with domestic violence or domestic torture simply aren't protected. Yes, sir. You don't need to show corruption. You just need to show the inability or unwillingness to protect. Yes, Your Honor. I completely agree with that. And the BIA should have granted relief on that That defeats any finding of acquiescence. And that is just contrary to Ornelas Chavez. So, I guess we're agreeing that says you don't have to report it. Now, that was a different context, but in certain circumstances, maybe you do need to report, but we don't have a blanket rule that you need to report. Yes. And Ornelas Chavez says you don't have to do it. Plus, she has testimony. I don't think we have a blanket rule saying you don't have to report either. Reporting or not reporting may be evidence that bears on the question of whether the authorities will protect an individual. In this case, I think the observation of the agency was that she didn't report, so you can't fault the police for not stopping her persecutor because they didn't know about it. And she said that she did not report it because he had a gun. She had a reason, no question about that. But that doesn't undermine the proposition that if the police don't know, they can't do anything about it. She may have a reason for not reporting, but they can say, by the same token, we don't have any basis to decide whether or not law enforcement would protect her because they didn't know that there was a problem. We do have evidence, though, that the Honduran government is aware of domestic violence and is not standing with it. We'll go back to Judge Eagle's question. We are aware there's a problem of domestic violence in this country, too. That doesn't mean the government's acquiescing in it. Correct. But Honduras has different facts than the United States. Murder is the second leading cause of death among young women in Honduras. And Honduras has chosen to, however, to enact laws. Gun violence is the leading cause of death for children in this country. Well, Your Honor, I'll take that up on a different issue, but on this case, the difference is that the government officials say that the violence against women is, quote, a consequence of romance and simply a matter of family violence. The judges and police encourage a woman to reconcile with her abuser instead of protecting her. And the lawmakers and judges and police are aware that they're subjected to horrific violence in their homes, and they send them back to their homes. The best case is parada, where their public officials at any level who look away meet the definition of acquiescence. There's nothing further. I'll give you your minute for rebuttal. Thank you. We'll hear from the government. Will you please, the court? My name is James Hurley, and I represent the Attorney General. We have one argument in this case where this court should remand this case in its entirety because the June 2nd, 2020 board decision at issue has been vacated under matter of AB. So under the ordinary remand rule, the agency should have the ability to determine whether either the Honduran women unable to leave a relationship or just Honduran women are a particular social group. Why should we remand the cat claim? That because for judicial economy in this case, we don't think— That seems to be teed up today and as to which the government's offered no opposition. But it's true that we didn't discuss the cat issue in the brief. So haven't you forfeited the ability to contest that claim? Well, in this case, we remanded 279 cases based on the AB decision, and there were cat issues with those cases as well. So it didn't— You may have waived that issue in a lot of cases. But in this instance, though, we want to keep the case together for both. Yeah, you want to, but we have a clear, distinct argument offered up by petitioner which the government elected not to respond to. So why is it the petitioners deprived the right to have that argument adjudicated? You may want to remand it, but I'm not sure why you have the ability to require this court to claim that you had the opportunity to respond to and did not. Well, we would just say that because the decision, the June 2 decision that's at issue in this case has been—was based on the vacated AB remand. It's just—it would make—it would be better if both issues— How is that better for petitioner who's teed up a cat claim that the government hasn't answered? So may have a winner right there on the cat claim. How is it better for the petitioner to give up that win and go back to the agency on the cat claim as well? It wouldn't be better. It wouldn't be better for them. So why is it that the petitioner should have to give up her currently advantageous position because the government elected not to contest the cat claim? I mean, what gives the government the power to say, okay, never mind. We're not going to adjudicate this case when it is teed up in front of us today. Well, because withholding that issue and a cat, although they're separate relief, a lot of the analysis of the facts are similar where they look at persecution for withholding, but just the torture for cat. So it would—for our purposes, it would be better if they were just decided for judicial, the economy of just deciding in one fell swoop. Just to the contrary. I mean, you're saying if the evidence is basically overlapping, why not give the maximum discretion to the BIA since they're looking at the evidence to consider all the legal consequences of that evidence, including a legal argument that you haven't challenged? That's true. But I think that the—just the analysis that goes into withholding, it would— the frustration would be if we do it on cat and the BIA decides to rely on cat, we're not going to get the resolution of the issue that the appellant so much wants out of us here today. Exactly. And I think the matter of AB issue, whether or not these social groups are cognizable, is—was the main issue in this case. And that's why we remanded many cases. Let me ask you this. I don't think that cat relief is identical to relief on withholding, is it? I think it's narrower. It is. It's a higher burden as well. Granting cat relief does not move the question of relief on withholding. Correct. Is that right? Correct. That question remains alive even if we were to hold that either on the merits or because you waived it, she gets cat. You could rule that, yes. We would argue that the entire case should go back. I understand that. My immediate question is whether or not a ruling by us on cat that grants cat relief moves out to withholding. And your answer is it does not. It does not. It would go back forward. Again, I would just argue that this case should be remanded under the ordinary remand rule. If you look at the AB decision that Attorney General Garland issued, he instructed the agency not to follow the AB1 or AB2 in order to provide the agency with the flexibility to consider the forthcoming rulemaking on this issue, which is proceeding right now. There was an executive order that President Biden issued on February 2nd that told the a regulation that would address these issues for asylum and withholding that dealt with domestic violence issues. And if the court were to grant the petition and say that Honduran women or Honduran women unable to leave a relationship were a cognizable social group, the ramifications would be extremely large for these asylum cases. So certainly large if all Honduran women were included as the class. Is there any solid precedent that grants as a recognizable social group all women in a country? No, not that I've seen. And what I've seen have been this court's remands in cases such as the Silvestre Mendoza versus Sessions case that this court remanded the question of Guatemalan women, whether they were a social group and the Torres Valdivia. Well, we came pretty close in the Somali female general mutilation case. I would say close. I wouldn't quite get it's not across the board. We came pretty close. Yes, that's true. I think that was a 2008 case or 2009. The name escapes me. But again, the whole analysis has gone. There's been a lot of development since then and since the Perdomo case in 2010. You know, this court issued the Enriquez Rivas case where they found that the question of  but they also determined that it deferred to the agency, whether their decisions in the matter of MEVG and WGR, the analysis that they set forth, this court deferred to that. Just to be clear, the government's position, your position is that on remand, the agency will have before it both arguable or advanced social groups, both Honduran women and Honduran relationships. Yeah, OK. Because that's what the board issued in this case. That's what they discussed. They discussed both the Honduran women. So both questions are open on the remand. OK. Yes. So that's our argument. There are no more questions. We just ask that this court remand this case. Thank you. Thank you. We'll have rebuttal. Thank you. I have two points. First, Pingüia Rodriguez, which is cited in our brief, granted CAT and then remanded the asylum claim for the BIA to make a new finding on HLSA, which is whether there is a new particular social group or not. So that does serve judicial economy to grant CAT and the remand, the particular social issues to the agency. The second point, if I could address the elephant in the room, if this court recognizes Honduran women, that decision will not let in half the world. It won't let in half of Honduras. And it might not even let in Ms. Alvarez. Only women who experienced past persecution can show nexus and have evidence that the Honduran government is unwilling and able can qualify. Singh, which is the case discussed in Perdomo, mentioned that Indio-Fijians is half the population of Fiji. That was not too diffuse of a size, of a category, and neither will be Honduran women. Second, the government gives no reason to contest that gender is neither particular or neither socially distinct. And the first circuit decision mentioned in dicta, in Depenye, that they would have granted this group if it had been properly exhausted. Because this is properly exhausted, we're asking for the court to reach that decision as well. If there are no further questions, may I submit the case? I have a question on the case. You may. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted. The remaining case on today's calendar is deferred as the parties are in mediation. That concludes this morning's calendar. We're in recess.
judges: Ebel, FLETCHER, CLIFTON